Robert COTTLE, individually, and in a derivative capacity on behalf of Hilton Hotels Corporation, Plaintiff,

v.

HILTON HOTELS CORPORATION, a Delaware corporation, and Barron Hilton, as Chairman, President and Chief Executive Officer and as a Director of Hilton Hotels Corporation, William H. Edwards, as President and as a Director, Henri Lewin, as Executive Vice President, E.T. Applegate, as Senior Vice President and Secretary, Maurice J. Scanlon, as Senior Vice President and Treasurer, James E. Garrett, as Vice President, Paul D. Buckley, as Vice President and as General Manager, Willard C. Howard, as Vice President and James E. Bates, Benjamin V. Lambert, Thomas R. Wilcox, Frank G. Wangeman, Sam D. Young, Jr., Gregory R. Dillon, John V. Giovenco, respectively as Directors of Hilton Hotels Corporation, Defendants.

No. 85 C 4610.

United States District Court, N.D. Illinois, E.D.

April 17, 1986.

 

sues. After a careful review of the pleadings and memoranda filed on this motion, the Court grants the defendants' motion to dismiss for the reasons elaborated below. The motion for protective order is moot.

Marshall Patner, Robert A. Holstein, Frederic F. Brace, Jr., Chicago, Ill., for plaintiffs.

Sheldon Karon, Lawrence A. Wojcik, Karon, Morrison & Savikas, Ltd., Chicago, Ill. and E. Norman Veasey, R. Franklin Balotti, Allen M. Terrell, Jr., Gregory V. Varallo, Richards Layton & Finger, Wilmington, Del., for defendant Hilton Hotels Corp.

Phil C. Neal, Ralph T. Russell, Jr., George M. Hoffman, Friedman & Koven, Chicago, Ill., for individual defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Robert Cottle filed this shareholder's derivative suit on behalf of Hilton Hotels Corporation ("Hilton") against nominal defendant Hilton and several officers and directors of Hilton ("the individual defendants") based on allegations that the individual defendants engaged in transactions surrounding the construction and eventual sale of a New Jersey casino and hotel which constituted a breach of fiduciary duty to Hilton and a waste of Hilton's corporate assets. Hilton, joined by the individual defendants, has moved to dismiss Cottle's complaint for failure to comply with the demand requirements of Fed.R. Civ.P. 23.1.[1] The defendants also filed a motion for a protective order barring further discovery on both the merits of Cottle's claims and certain jurisdictional issues.

### I. FACTUAL ALLEGATIONS

Hilton is a major hotel management corporation incorporated in Delaware with its principal place of business in Beverly Hills, California. It operates hotel facilities in many locations across the country. Cottle owns shares of common stock in Hilton and owned them at the time that all transactions relevant to this case took place. The allegations in Cottle's complaint involve the decision of Hilton's board of directors to build a casino and hotel facility in Atlantic City, New Jersey. The attraction to the Atlantic City location was apparently the lucrative legalized gambling business, and the financial success of the hotel-casino project turned largely on approval and licensing by the New Jersey Casino Control Commission ("the Commission"). The individual defendants made public pronouncements projecting financial success while representing that the proposed casino would be licensed without a problem. Cottle alleges that these defendants knew or should have known that the Commission had "stringent licensing requirements."

While the individual defendants predicted that their casino proposal was an offer the Commission could not refuse, they instead encountered serious obstacles in their pursuit of a license. Allegations were made before the Commission that the individual defendants fostered a relationship between Hilton and Sidney Korshak, a Chicago attorney who, according to the complaint, "had been identified by state and federal law enforcement officials and a United

---

1. The individual defendants initially moved to dismiss the complaint on the additional ground that this Court lacked personal jurisdiction over any of them. In conjunction with that claim, Hilton moved to dismiss for Cottle's failure to join indispensable parties claiming that at least one individual defendant must be joined for a derivative action to proceed. The individual defendants have since withdrawn their personal jurisdiction motion thus eliminating the necessity that the Court address any of these claims.

States Senate Sub-Committee as a prominent link between organized crime and legitimate business." Complaint ¶ 11. The individual defendants failed to sever this relationship with Korshak even though they were aware that it would jeopardize their chances of successfully obtaining the casino license.

On February 28, 1985, the Commission denied a casino license for Hilton as a result of the Korshak connection. At first, the defendants announced that they would appeal the Commission's ruling, but instead sold the entire project to New York real estate entrepreneur Donald Trump for $320 million. This sale did not result from a competitive bidding process and yielded a purchase price approximately $20 million above Hilton's investment in the project.

Cottle alleges that were it not for the Korshak affiliation and the individual defendants' failure to distance the Hilton Corporation and themselves from Korshak, the Commission would have granted the license. Hilton has been harmed, Cottle further claims, by the loss of expected casino and hotel earnings in the millions of dollars and by the sale of the casino and hotel project at a loss.[2] Cottle also alleged that the individual defendants sold the project to Trump "without bidding or otherwise fully exploiting the market" as part of an improperly motivated scheme to stave off an attempted takeover of Hilton and entrench themselves in their current corporate positions.

Except for the cursory assertion that the individual defendants were in part motivated by the desire to retain their positions, the complaint does not contain any allegations regarding any personal benefits which might have accrued to the individual defendants as a result of these transactions. Cottle does not allege that the individual defendants had any sort of financial stake in their association with Korshak or their refusal to sever that association.

## II. MOTION TO DISMISS UNDER RULE 23.1

 Shareholder derivative suits are in a distinct class of federal litigation and are governed by a special procedural rule which states:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Fed.R.Civ.P. 23.1. The only aspect of Rule 23.1 relevant to the present motion is the shareholder demand requirement which establishes as a prerequisite to maintaining a shareholder derivative action the plaintiff's demand on the directors of the corporation to take action to correct the asserted

---

**2.** Although the sale of the project yielded $20 million in excess of Hilton's investment, Cottle claims that there was a net loss when that gain

is compared to the interest sacrificed during the relevant period in which the corporate capital was tied up in the casino project.

wrong. This requirement was intended to encourage the intracorporate resolution of disputes and protect the managerial freedom of those delegated with the responsibility of running the business. *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984). That policy is merely an extension of the business judgment rule, which dictates that judicial interference with corporate decision-making shall be limited to circumstances where the directors are not in a proper position to make sound corporate judgments. *Id.* Furthermore, there are numerous practical advantages to encouraging the corporation to pursue recourse on its own behalf. *See Lewis v. Graves,* 701 F.2d 245, 247–48 (2d Cir.1983).

■ Nevertheless, procedural rules have been developed to provide shareholders with a remedial option to sue derivatively in behalf of the injured corporation even without first complying with the demand requirement. Thus, the requirement will be excused in certain circumstances where it would not be logical to require such a demand. 7A C.A. Wright & A.R. Miller, *Federal Practice and Procedure* § 1831 (1972). However, where federal subject matter jurisdiction in a derivative suit rests on the parties' diversity of citizenship, courts must refer to the substantive law of the relevant state, which in almost all circumstances will be the state of incorporation of the aggrieved corporation. *See Kreindler v. Marx,* 85 F.R.D. 612, 615 (N.D.Ill.1979). Moreover, the demand requirement has been described as a substantive right of the corporation and not simply a procedural prerequisite to the derivative action. *Haber v. Bell,* 465 A.2d 353, 357 (Del.Ch.1983). Thus, the substantive right to a demand on the corporation must be kept conceptually apart from the procedural requirement of Rule 23.1 that the plain-

tiff shareholder plead with particularity his or her efforts to obtain relief from the corporation or the reasons for not making such an effort. *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 544 & n. 2, 104 S.Ct. 831, 843 & n. 2 (1984) (Stevens, J. concurring).[3] Thus, in the present case this Court is faced with the task of evaluating whether Cottle has pleaded with particularity (federal procedural requirement) facts which would constitute grounds for excusing the pre-suit demand requirement under Delaware law (state substantive requirement). It is with this analytical framework in mind that we evaluate Cottle's complaint.

In a relatively recent case, the Delaware Supreme Court established the standards for excusing the demand requirement in derivative suits against Delaware corporations. *Aronson v. Lewis,* 473 A.2d 805 (Del.1984).[4] The court noted that the "derivative" nature of shareholder suits extends from the primary right of a corporation to pursue its own legal interests. *Id.* at 811. Hence, under ordinary circumstances, a corporation through its board of directors, should be able to make the decision whether to pursue legal remedies for injuries to the corporate entity. As with other corporate decision-making processes, the decision of whether to sue is accorded great deference by the courts under the so-called "business judgment" rule. *Aronson,* 473 A.2d at 812 ("It is a presumption that in making a business decision the directors of a corporation acted on an informal basis, in good faith and in the honest belief that the action taken was in the best interests of the company").

Under this analysis, the plaintiff shareholder must plead particular facts suggest-

---

**3.** In his customarily perceptive manner, Justice Stevens observed in his concurring opinion that Fed.R.Civ.P. 23.1 merely creates a pleading requirement and not a substantive right to pre-suit demand. He further noted that the Rules Enabling Act, 28 U.S.C. § 2072 (1982), prohibits enlargement or alteration of a substantive right by a procedural rule.

**4.** In *Aronson,* the court was evaluating the plaintiffs' pleadings under Delaware Chancery Court Rule 23.1, Del.Ch.Ct.R. 23.1, which substantially mirrors Fed.R.Civ.P. 23.1 and includes a requirement that plaintiff plead with particularity the reasons for not making a pre-suit demand on the directors. However, in its fundamental analysis of the demand requirement, the court applied Delaware substantive standards.

ing that the corporate directors are not entitled to hide within the impenetrable fortress of the business judgment rule with respect to their participation in the transactions for which legal remedies are sought by the shareholder. The same circumstances which remove the business judgment rule's protections in other contexts will negate its applicability to the shareholder demand requirement. Thus, directors cannot raise the business judgment rule where they are personally interested in the questioned transactions such as where they sit on both sides of a corporate transaction or engage in self-dealing. *Aronson*, 473 A.2d at 812. Furthermore, their judgment must follow the consideration of all material information reasonably available of which they have a duty to inform themselves. *Id.*

In paring these considerations down to a "test" for determining the futility of the shareholder demand requirement, the Delaware Supreme Court requires that a trial court

> must decide whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Hence, the Court ... must make two inquiries, one into the independence and disinterestedness of the directors and the other into the substantive nature of the challenged transaction and the board's approval thereof.

*Id.* at 814. If a reasonable doubt has been raised with respect to *either* the directors' disinterestedness and independence or whether the decision was otherwise a valid business judgment, the demand requirement will be excused and the shareholder permitted to pursue the derivative action.

*Pogostin v. Rice*, 480 A.2d 619, 624–25 (Del.1984).

■ In the present case, the only overt reason Cottle alleges to excuse his failure to execute a pre-suit demand is that "[b]ecause the defendant directors were responsible for the matters complained of, it would be futile to demand that they cause the Corporation to sue themselves." Complaint ¶ 22. No other allegations in the complaint purport to establish grounds for not making a demand on the corporation prior to the filing of the suit. Furthermore, the parties do not dispute the fact that Cottle never made any such demand.[5] Cottle's assertion in Paragraph 22 boils down to a contention that because the Hilton directors directly participated in and approved of the transactions regarding the casino project and casino licensing procedure, a demand for them to pursue legal remedies on Hilton's behalf would be futile. However, several courts have held that the mere fact that directors participated in and authorized the disputed transactions underlying the derivative suit is not enough by itself to excuse demand. *Aronson*, 473 A.2d at 817; *accord Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir.1983); *Lewis v. Curtis*, 671 F.2d 779, 785 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). If this were the only prerequisite to excusing demand, the demand requirement would be effectively repealed since, by definition, the directors have a hand in all corporate transactions of any consequence. *See Graves*, 701 F.2d at 248.

The contention that prior board approval of the disputed transaction negates the demand requirement is often coupled with the quite similar but also universally rejected argument that demand is excused where the directors are called upon to sue *themselves* in behalf of the corporation. The rationale for this argument is that the

---

**5.** On August 20, 1985, this Court granted a motion to transfer to this Court as a related case Lewis v. Hilton, No. 85–6968 (N.D.Ill. filed Aug. 7, 1985), a derivative suit by another Hilton shareholder based on the same transactions questioned here. *See* Local Rule 2.31. We stayed all proceedings in *Lewis* until resolution of this motion to dismiss. Lewis, however, alleged that he made a demand on Hilton's directors and his case would not be affected by today's ruling. The Court will hold a status hearing in the *Lewis* case on May 2, 1986, at 10:30 a.m.

plaintiff shareholder cannot expect to successfully place the litigation in the hands of the very parties whose actions are being challenged. Again, this circumstance alone is not sufficient without more particularized allegations regarding director disinterestedness in the underlying business transactions to excuse the shareholder demand requirement. *Aronson,* 473 A.2d at 818; *Allison on behalf of General Motors Corp. v. General Motors Corp.,* 604 F.Supp. 1106, 1114–15 (D.Del.), *aff'd,* 782 F.2d 1026 (3d Cir.1985).

These are not the type of excuses which permit shareholders to circumvent the demand requirement under the *Aronson* test. Rather, as the first part of the test suggests, the allegations must create a reasonable doubt that the underlying corporate transactions were made by disinterested and independent directors. *Aronson,* 473 A.2d at 814. As elaborated in further detail by the court in *Pogostin v. Rice,* 480 A.2d 619, 624 (Del.1984), "[d]irectorial interest exists whenever divided loyalties are present, or a director has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders." However, in Cottle's case, nothing has been alleged which even remotely suggests that the Hilton directors' decision to pursue the casino project, to associate with the purportedly nefarious Korshak or to abandon the casino project following the license denial was motivated by any personal interest. Nor, for example, has any external allegiance been alleged such that the directors could be presumed to lack "independence." Because none of the complaint's allegations raises a reasonable doubt that the Hilton directors were disinterested and independent, Cottle has not met the first part of the *Aronson* test for excusing demand.

A plaintiff-shareholder can also be excused from demand under *Aronson* if he or she can allege particularized facts which create a reasonable doubt that the challenged transaction was the product of a valid business judgment notwithstanding the directors' disinterestedness and independence. *Aronson,* 473 A.2d at 814. This aspect of the test has not been examined as thoroughly by the courts, though the *Aronson* court alluded to the narrowness of this exception when it noted that "in *rare* cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists." *Id.* at 815 (emphasis added). Again, Cottle failed to allege any particularized facts which would suggest that any of the casino transactions were the product of anything besides a valid business judgment. The protections of the business judgment rule are waived only in the case of improperly-motivated corporate decisions, not in the case of poor ones. Thus, Cottle's only recourse may be at the annual shareholders' meeting.

Next, the Court addresses two additional potential bases for excuse of demand raised by Cottle in response to the defendants' motion to dismiss. The defendants anticipated that Cottle would argue that his allegations of waste of corporate assets and entrenchment in corporate office, Complaint ¶¶ 19, 20, sufficiently demonstrated the futility of pre-suit demand, although it is apparent from the complaint that Cottle included these claims as part of his allegation of liability and not as an excuse for his failure to make a demand. However, since Cottle cursorily argued these points in his memorandum in opposition to the motion to dismiss, we will deal with them briefly. In *Pogostin v. Rice,* 480 A.2d 619 (Del.1984), the Delaware Supreme Court applied the principles laid out in *Aronson* to a shareholder suit alleging wrongful rejection of a tender offer by the corporate directors. The plaintiffs failed to make a pre-suit demand on the directors, claiming unsuccessfully that demand should be excused. Among other things, the plaintiffs in *Pogostin* claimed that the directors' rejection of the tender offer permitted them to receive bonuses under a shareholder-approved executive compensation plan (waste of corporate assets) and to maintain their

positions of control in corporate management (entrenchment).

In rejecting these claims as a basis for excusing demand, the *Pogostin* court noted that plaintiff shareholders "have the burden of demonstrating by particularized allegations that the ... [director action] is so devoid of a legitimate corporate purpose as to be a waste of assets." 480 A.2d at 626. If Cottle had met this pleading obligation, demand would have been excused under the second part of the *Aronson* test discussed above. Hence, his corporate waste claim adds nothing to his demand excuse argument. The *Pogostin* court further noted that while a claim that directors have acted with the sole or primary motive of perpetuating themselves in office would be sufficient to excuse demand, the plaintiff must allege particularized facts to sustain such a claim. *Id.* at 627. In the present case, Cottle has merely pled in a conclusional fashion his charge that the Hilton directors sold the casino project without bidding "as an improper entrenchment device to ward off a takeover attempt of Hilton." Complaint ¶ 19. This Court does not view this allegation as the type of particularized pleading of entrenchment sufficient to excuse demand.[6]

Cottle's complaint must be dismissed under Fed.R.Civ.P. 23.1 in light of the above discussion.[7] While the *Aronson* test appears to present substantial barriers to the maintenance of a shareholder derivative suit, this Court believes that the Delaware Supreme Court contemplated precisely that result. In its own words, that court felt that "[t]he reasonable doubt standard in conjunction with the particularity requirement of [Chancery] Rule 23.1 strikes the essential balance between avoiding abuse

of the derivative action and forcing a plaintiff to plead evidence without the benefit of discovery." *Pogostin*, 480 A.2d at 625. In the context of Fed.R.Civ.P. 23.1, federal courts called upon to apply the Delaware demand excuse standard must avoid an overly restrictive reading of the *Aronson* rule in order to maintain that balance and remain mindful that the plaintiff shareholder need only plead facts which raise a reasonable doubt of director disinterestedness, and not a certainty.

### III. CONCLUSION

The defendants' motion to dismiss Cottle's complaint for failure to comply with Fed.R.Civ.P. 23.1 is allowed. Accordingly, the defendants' motion for a protective order is dismissed as moot. It is so ordered.

---

**6.** Cottle claimed, in any event, that he need not rely on the entrenchment argument to establish an excuse for the pre-suit demand requirement. Plaintiff's Answering Memorandum in Opposition to Defendants' Motion to Dismiss Based on F.R.C.P. 23.1 at 8. We note that even with this argument, his pleadings are inadequate to excuse demand.

**7.** Motions to dismiss under Fed.R.Civ.P. 23.1 are ordinarily decided solely on the basis of the

complaint. *Lewis v. Graaves*, 701 F.2d 245, 248 (2d Cir.1983). While Hilton's motion to dismiss was pending, all defendants filed a motion for a protective order, Fed.R.Civ.P. 26(c), regarding outstanding discovery requests by Cottle. At a status hearing on November 1, 1985, this Court indicated that it would decide in what order to rule on these two motions. Granting the motion to dismiss renders moot the motion for protective order.