Rodney B. SHIELDS, derivatively on Behalf of SUNDSTRAND CORPORATION, Plaintiff,

v.

Evans W. ERICKSON, et al., Defendants.

No. 88 C 8207.

United States District Court, N.D. Illinois, E.D.

March 28, 1989.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This is a shareholder derivative action brought under Fed.R.Civ.P. 23.1 on behalf of Sundstrand Corporation and against eighteen officers and directors of Sundstrand, based on violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), RICO conspiracy, violations of the Foreign Corrupt Practices Act (part of the Securities Exchange Act of 1934), § 14(a) of the Securities Exchange Act, and pendent state law claims. The complaint is based primarily on indictments against and guilty pleas entered by Sundstrand Corporation for defrauding the United States government by overcharging it on defense

contracts, for bribery of Defense Department personnel, and for fraudulently taking tax write-offs to which Sundstrand was not entitled. As a result of the guilty pleas, Sundstrand and its subsidiary, Sundstrand Data Control, Inc. ("SDC"), have paid $127.3 million to the United States in civil settlements and criminal fines. The government may still be pursuing additional claims. Further, Sundstrand has been suspended from receiving any new government contracts, and its export licenses have been suspended.

Plaintiff shareholders bring this action against the officer and director defendants for permitting and acquiescing in the wrongful acts resulting in the above criminal convictions, and for allowing Sundstrand to maintain an inadequate system of internal controls such that Sundstrand's assets could be misused. The "outside director" defendants, the "director-officer and officer" defendants, and nominal defendant Sundstrand Corporation all move to dismiss the complaint on numerous grounds. For the reasons stated below, defendants' motions are granted.

### Analysis

For the purpose of deciding defendants' motions to dismiss, we take as true the allegations of the complaint, along with all reasonable inferences therefrom in the light most favorable to the plaintiff. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief.... Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986) (citations omitted). Further, Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." With these principles in mind, we consider the defendants' objections to the plaintiffs' complaint.

1. *Count III: Violation of the Foreign Corrupt Practices Act.*

■ Plaintiffs allege that the defendants violated Section 13(b)(2) of the Securities Exchange Act of 1934 (15 U.S.C. § 78m(b)(2)) and Rules 13b2–1 and 13b2–2 promulgated thereunder (17 C.F.R. §§ 240.-13b2–1 and 240.13b2–2), also known as the Foreign Corrupt Practices Act, by failing to provide Sundstrand with adequate financial and accounting controls and by misrepresenting, concealing and falsifying information. Defendants respond that there is no private right of action under § 13(b)(2). We agree and dismiss this count of the complaint for failure to state a claim upon which relief may be granted.

No court of appeals has yet ruled on whether § 13(b)(2) creates a private right of action. Only two district courts have considered the issue and both held that it does not. *See Eisenberger v. Spectex Industries, Inc.,* 644 F.Supp. 48, 50–51 (E.D. N.Y.1986); *Lewis v. Sporck,* 612 F.Supp. 1316, 1332–33 (N.D.Cal.1985). We find that the district court for the Northern District of California has carefully analyzed the legislative history of § 13(b)(2), and considered all the factors set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), as relevant to the question of whether a private right of action should be implied into a statute. The district court carefully reviewed the legislative history of the statute, including the specific portions cited by the plaintiffs in this case, and held that Congress did not intend to create a private right of action. We find the California court's reasoning persuasive and adopt it. We find no convincing evidence in the legislative history to support plaintiffs' contention that Congress intended this provision, which requires the corporation to use proper accounting methods and internal accounting controls, to create a private right of action. We therefore conclude that Count III of the complaint must be dismissed.

## 2. *RICO Claims and Rule 9(b): Pleading fraud with particularity.*

■ Defendants allege numerous defects in plaintiffs' RICO count pleadings (Counts I and II) based on the Fed.R.Civ.P. 9(b) requirement, quoted above, that fraud must be plead with particularity. We find no merit to these claims.

First, defendants complain that the pleadings on fraud are insufficiently particular in stating when the alleged activities occurred. Plaintiffs have alleged appropriate time periods, such as "from at least August 1981 to and including at least June 3, 1985, the defendants ... devised ... a scheme ... to defraud" (Complaint, ¶ 34). Further, they have attached copies of the plea agreements entered by Sundstrand when it plead guilty to the underlying criminal charges. We believe that if the time periods alleged were sufficiently specific to support a corporate plea of guilt to criminal charges, they are also sufficiently specific to apprise the defendants here of plaintiffs' claims. Rule 9(b) must be read in conjunction with Fed.R.Civ.P. 8, which requires only that the complaint provide defendants with notice of plaintiffs' claims. *See Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir. 1975). We think the complaint provides sufficient notice as to the time of the relevant acts. *See Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 540 (N.D.Ill.1981) ("when the transactions are numerous and take place over an extended period of time, less specificity is required").

■ Defendants also allege that the complaint is deficient because it fails to sufficiently allege the use of wire communications and the mails for the predicate acts of wire and mail fraud. We note that plaintiffs' allegations as to these matters tend to be a bit conclusory and do not describe specific phone conversations or mailings. *See, e.g.,* Complaint, ¶ 68 ("for the purpose of executing such scheme and artifice ... the defendants, placed ... matter to be sent and delivered by the Postal Service...."). However, based on the allegations of the complaint, it is clear that defendants would have had to use interstate mail and wire communications. For example, plaintiffs allege that fraudulent tax returns were filed. This would require the use of interstate mails. Similarly, plaintiffs allege numerous fraudulent transactions with Department of Defense personnel, including bribery, contract negotiations, and over-billing on government contracts, all of which would clearly necessitate the use of interstate mails and wire communications. While the complaint is not particularly well-pleaded with respect to the necessary allegations of the use of the mails and wire communications in furtherance of the scheme, we believe it is sufficient to satisfy the demands of notice pleading in the Federal Rules of Civil Procedure. *See Systems Research, Inc. v. Random, Inc.,* 614 F.Supp. 494 (N.D.Ill. 1985) (no specific allegations of occurrences of mail and wire fraud, but plaintiffs did indirectly describe the contents of the mailings); *Olympic Federal v. Remp,* slip opinion, No. 87 C 8705, 1988 WL 64410, 1988 U.S.Dist.Lexis 5579 (N.D.Ill.1988). We believe that we can reasonably infer the existence of the necessary interstate communications from the complaint, particularly in light of plaintiffs' general averments that they occurred.

■ Defendants further argue that the RICO claims are deficient because they fail to distinguish among the eighteen individual defendants by alleging any specific wrongdoing by any particular defendant or by alleging who in particular among the defendants participated in each of the predicate acts alleged. "[W]here there are multiple defendants, a pleading is sufficient when it reasonably notifies each defendant of the part he or she plays in the scheme." *Morgan v. Kobrin Securities, Inc.,* 649 F.Supp. 1023, 1028 (N.D.Ill.1986). We think that the complaint suffices to provide defendants with such notice. The complaint extensively describes all the alleged predicate acts of fraud. It further describes the role of each of the defendants as that of having acquiesced in the misconduct and, in essence, negligently and wrongfully failing to properly supervise

the corporation and its internal accounting and auditing.[1] We note that:

> Where, as here, multiple defendants are involved, the complaint must provide reasonable notice of the part each defendant allegedly played in the scheme. That rule is modified, however, where the multiple defendants are all corporate insiders. Numerous courts have held that the conduct of such individuals need not be specified and the fraudulent acts complained of need not be attributed to certain persons if the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer the allegations.

*Banowitz v. State Exchange Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985). *See also Donato v. Merrill, Lynch, Pierce, Fenner & Smith,* 663 F.Supp. 669, 673 (N.D.Ill. 1987); *Morgan,* 649 F.Supp. at 1028. In light of the above, we hold that the complaint alleges with sufficient particularity the claims against each of the defendants.

Finally, defendants argue that plaintiffs have failed to properly plead a pattern of racketeering activity and have merely alleged one scheme. We find this claim patently absurd. The Seventh Circuit has noted that a pattern of racketeering activity requires *at least* two acts of racketeering activity, along with continuity plus relationship between the predicate acts. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 974 (7th Cir.1986). The court held:

> In order to be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., 'transactions somewhat separate in time and place.' Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. However, the mere fact that the predicate acts relate to the same overall scheme or involve the same vic-

tim does not mean that the acts automatically fail to satisfy the pattern requirement.

*Id.* at 975–76 (citations omitted).

We think it clear that plaintiffs have alleged a pattern of racketeering activity. Plaintiffs have alleged that the defendants all participated in at least five schemes to defraud a single victim, the federal government. These schemes included illegally billing cost overruns as part of overhead expenses, billing personal expenses such as gifts, taking improper tax write-offs, bribing government officials, and improperly billing the government for patent litigation costs of a Sundstrand subsidiary. These schemes were ongoing over several years, inflicted distinct injuries, and involved numerous predicate acts. We think it clear that plaintiffs have shown both continuity and relationship. The allegations involve an ongoing pattern of repeated acts and a variety of schemes with a single purpose: to continuously cheat the federal government. The complaint sufficiently states a pattern of racketeering activity.

3. *Rule 23.1: Failure to make demand on the corporation.*

Fed.R.Civ.P. 23.1, which provides the basis for this shareholder derivative suit, states:

> The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

The complaint alleges that demand has not been made upon Sundstrand and that such demand would be futile. The following reasons are provided to justify plaintiffs' claim of futility: the defendant directors are not disinterested because they participated in the wrongs complained of; the wrongdoers dominate and control the

---

1. Although none of the defendants has raised this issue, we question whether negligence on the part of the directors and officers would be sufficient to subject them to liability under RICO.

board, so it cannot exercise independent judgment; the directors have so far failed to act against those responsible for the illegal conduct despite Sundstrand's being forced to pay over $127 million to the federal government; the acts complained of are illegal, fraudulent and wasteful and are incapable of ratification; the board is not independent and most of the directors are either officers of Sundstrand or beholden to such officers or are affiliated with other defense contractors and hence subject to the nationwide defense contractor scandal; the directors would be required to sue themselves and their friends to bring this action; the directors receive benefits, including salaries, for their service on the board and their desire to preserve their positions renders them incapable of exercising independent judgment; and the directors have evidenced their desire to limit their liability by recommending and securing approval of an amendment to Sundstrand's certificate of incorporation limiting director's liability for negligence.

Defendants claim that these allegations are insufficient to excuse demand and note that, prior to the filing of this lawsuit, the directors had already brought in independent counsel, Mr. Philip Tone, to investigate the wrongdoing resulting in Sundstrand's guilty pleas.[2] We agree that the complaint fails to sufficiently allege futility and dismiss all counts based upon derivative liability.

In determining whether demand is futile, we must first consider the question of what law applies. Defendants argue that Delaware law applies, while plaintiffs claim federal law applies. The question is surprisingly tricky. The courts appear to be split over whether state or federal law applies when interpreting the demand requirement. *See In re Consumers Power Co. Derivative Litigation,* 111 F.R.D. 419, 422 (E.D. Mich.1986).

We are inclined to apply federal law because this lawsuit is based on a federal claim under RICO and not upon diversity jurisdiction. *Id.* at 423. *See also Lewis v. Graves,* 701 F.2d 245, 248 (2d Cir.1983); *Leff v. CIP Corp.,* 540 F.Supp. 857 (1982). *But see Burks v. Lasker,* 441 U.S. 471, 477–78, 99 S.Ct. 1831, 1836–37, 60 L.Ed.2d 404 (1979), which hold that state law should be applied regarding demand in a suit under the Investment Company Act of 1940 because the relevant state law is not inconsistent with the federal policy forming the basis for the lawsuit. Therefore, we consider both federal and Delaware demand law, and note that the outcome is the same under each.

*Federal Law*

■ Federal courts generally hold that absent specific allegations of self-dealing or bias on the part of a majority of the board, mere director approval of and acquiescence in the alleged misdeeds are insufficient to render demand futile. *Kamen v. Kemper Financial Services, Inc.,* 659 F.Supp. 1153, 1162 (N.D.Ill.1987); *In re Consumers Power Co.,* 111 F.R.D. at 423; *Lewis v. Sporck,* 612 F.Supp. at 1322. "[I]f director approval of the transaction was enough to excuse demand, it would mean that demand would be excused in practically every case. Moreover, in a case where the directors have merely acquiesced or approved a transaction, even if they were grossly negligent in doing so, there is no irrebuttable presumption that the directors would not consider a claim for relief." *Id.* at 424.

The purpose of the demand requirement is to notify directors of a potential claim so that they may investigate it and pursue intracorporate remedies. The requirement stems from the recognition that "derivative actions brought by minority stockholders could, if unconstrained, undermine the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors." *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984); *Kamen,* 659 F.Supp. at 1160. Rule 23.1 per-

---

**2.** The futility of demand must be considered on the basis of existing facts at the time the derivative suit is commenced. *Vanderbilt v. Geo–En-*

*ergy, Ltd.,* 725 F.2d 204, 210–11 (3d Cir.1983); *Aronson v. Lewis,* 473 A.2d 805, 810 (Del.1984).

mits a court to excuse the failure to make a demand only if the plaintiffs allege with particularity specific circumstances which indicate that the directors would have ignored their complaints or refused to take any action on them. *Kamen,* 659 F.Supp. at 1160.

We think it clear that plaintiffs have not sufficiently alleged that demand would be futile. "[A]bsent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile." *Lewis v. Graves,* 701 F.2d at 248. All the directors are accused of the same kind of participation in the wrongdoing: approving or acquiescing in the alleged misdeeds and permitting the corporation to operate with insufficient accounting controls. There are no specific allegations of self-dealing as to any directors, or that the directors have personally benefitted from the illegal activities, or that any director is criminally culpable. At most, the directors are accused of negligence. This is insufficient to subject any director to criminal liability or to demonstrate that the directors would not consider a claim for relief.

The only self-interest plead is that the directors would not want to bring this suit because it would subject them to liability. This is insufficient to excuse demand. *See Cottle v. Hilton Hotels Corp.,* 635 F.Supp. 1094, 1098–99 (N.D.Ill.1986) (applying Delaware law); *Mozes v. Welch,* 638 F.Supp. 215, 219 (D.Conn.1986). The mere assertion that board members receive payment for services rendered as directors is also insufficient to avoid the demand requirement. *Kamen,* 659 F.Supp. at 1162.

Further, federal courts have rejected as excuses for demand conclusory allegations that the directors are "dominated and controlled" by certain defendants, *Kamen,* 659 F.Supp. at 1162–63; and allegations that the acts complained of are crimes and therefore incapable of ratification. *Lewis v. Sporck,* 612 F.Supp. at 1322–23 (ratification is not the only option; the board must be given a fair opportunity to decide whether the corporation itself should bring

the suit). Allegations that directors knew or should have known of, and failed to stop, illegal conduct are insufficient to excuse demand where the complaint fails to show with particularity that a majority of the board was biased or was aware of the wrongdoing and deliberately looked the other way. *In re E.F. Hutton,* 634 F.Supp. 265, 271 (S.D.N.Y.1986) (applying federal and Delaware law). Thus, the relevant federal law shows that plaintiffs have insufficiently plead the futility of demand.

*Delaware Law*

If state law applies, the law of Delaware would be used since Sundstrand is incorporated under Delaware law. Delaware law, like federal law, recognizes the demand requirement as based on the fundamental precept that directors manage the corporation, not shareholders. *Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984). Demand is excused if the complaint demonstrates that the directors are not disinterested. *Aronson,* 473 A.2d at 814–15. However, the mere fact that the lawsuit would subject the directors to liability is insufficient to show interest. *Cottle,* 635 F.Supp. at 1098–99; *Aronson,* 473 A.2d at 818. Nor is there interest merely because the board receives payment for its services. *Grobow v. Perot,* 539 A.2d 180, 188 (Del.1988). Vague allegations of control or domination of the Board will not suffice to excuse demand. *Aronson,* 473 A.2d at 815–16. Allegations that the entire board "participated" in the wrongs or "approved" of them is also insufficient. *Id.* at 817. Hence, plaintiffs have failed to plead futility with sufficient particularity to excuse demand under Delaware law. Because plaintiffs have failed to allege that they have satisfied the demand requirements under either federal or state law, the derivative claims must be dismissed in their entirety.

*4. Proxy Claims.*

■ Count IV appears to state another derivative claim based upon § 14(a) of the Securities Exchange Act. Based upon the above, plaintiffs have failed to plead the

futility of demand. Hence, Count IV is dismissed.

Count V pleads a class action claim for violation of § 14(a). Plaintiffs claim that proxy statements issued each March during the years 1983 to 1988 contained misleading omissions and misstatements of material facts. The proxies concerned the election of various directors of Sundstrand and the adoption of an amendment to the Certificate of Incorporation of Sundstrand limiting directors' liability for negligent conduct. The amendment does not limit liability for intentional or knowing misconduct, applies prospectively only, and therefore would not operate to shield any of the defendants in this lawsuit from liability for any of the claims alleged in the complaint.

Plaintiffs allege that the class consists of all shareholders of Sundstrand stock on September 26, 1988. Since this date is *after* all the relevant proxy votes, we find that such a class is improper to challenge the contents of the proxy statements, and we dismiss Count V. The named class cannot have standing, since the alleged omissions or misrepresentations were made and the relevant votes taken *prior* to their ownership of stock, and they therefore could not have relied on the proxy solicitations. *Gaines v. Haughton,* 645 F.2d 761, 774 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982), *overruled in part on other grounds, In re McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984). While some class members may well have held stock at the appropriate times, this is nowhere plead in the complaint. Further, even if some class members would have standing on this basis, the class as a whole would not and is improperly defined. Hence, the class action must be dismissed.

We further note that it is unlikely that, as a matter of law, the alleged omissions or misrepresentations are material for § 14(a) purposes. In *Gaines,* 645 F.2d 761, a case involving corporate bribery of foreign officials, the court held that, "[a]bsent credible allegations of self-dealing by the directors or dishonesty or deceit which inures to the direct, personal benefit of the directors ... we hold that director misconduct of the type traditionally regulated by state corporate law need not be disclosed in proxy solicitations for director elections. This type of mismanagement, unadorned by self-dealing, is simply not material or otherwise within the ambit of the federal securities laws." *Id.* at 779 (citations omitted). *See also, United States v. Matthews,* 787 F.2d 38, 47–49 (2d Cir.1986) (§ 14(a) does not require an officer seeking election to disclose in proxy statement that he is guilty of an uncharged crime).

### 5. *Pendent State Law Claims.*

Because all the federal question claims have been dismissed, we decline to exercise pendent jurisdiction over the state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966).

### *Conclusion*

The complaint is dismissed with leave to amend within thirty days.