CITICORP INTERNATIONAL
TRADING COMPANY,
INC., Plaintiff,

v.

WESTERN OIL & REFINING COMPA-
NY, INC., Robert A. Zander and
Karin Zander, Defendants.

No. 88 Civ. 5377 (RWS).

United States District Court,
S.D. New York.

July 22, 1991.

**602**

Milgrim Thomajan & Lee P.C., New York City (William F. Kuntz, II, David P. Langlois, of counsel), for Citicorp Intern. Trading Co., Inc.

Robert A. Zander and Karin Zander, pro se.

## OPINION

SWEET, District Judge.

Plaintiff Citicorp International Trading Company, Inc. ("CITC") has moved to dismiss the counterclaims and third party complaint of the *pro se* defendants Robert A. Zander ("Zander") and his wife Karin Zander ("Karin Zander") under the provisions of Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Because both sides have submitted some material outside of the pleadings the motion will also be deemed as one for summary judgment under Rule 56. The Zanders have also moved to dismiss the complaint for failure to comply with discovery demands. For the following reasons, CITC's motion is

granted in part and denied in part, and the Zanders' motion is denied.

## PRIOR PROCEEDINGS

The prior proceedings in this action prior to the instant motion were described in the last opinion of the court filed on January 16, 1991, 1991 WL 4502 ("the January Opinion"), which denied CITC's motion for judgment on the complaint and granted the Zanders leave to file an amended answer. That description is incorporated here by reference, and familiarity with it is presumed.

In the January Opinion, the Zanders were granted thirty days within which to file an amended counterclaim and third-party complaint. The amendments were filed on February 15, 1991, and the instant motion followed. It was heard and submitted on March 22, 1991. While it was *sub judice*, the Zanders moved to dismiss the complaint for failure to comply with discovery demands, a motion which is denied in view of this opinion.

## DISCUSSION

### Standard for a Motion to Dismiss

■ In dealing with a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., the court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.*, 423 F.2d 188, 191 (2d Cir.1969), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). It should then dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that would entitle it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker*, 748 F.2d 85, 88

(2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### The Surviving Counterclaims Satisfy Rule 8(a)

■ Rule 8(a) provides that each pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief. January Opinion at 9; *Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y.1981). The Amended Counterclaims consist of two hundred and twenty paragraphs which allege thirteen causes of action.[1] While many of the allegations are repetitive and while the pleading is most assuredly not a model of clarity, length alone is not a sufficient grounds for dismissal under Rule 8(a). The primary problem with the Zanders' pleading is that at least some of the later claims repeat the allegations of earlier claims with the main difference being the nature and the amount of damages which are alleged to have occurred as a result of CITC's behavior. However, given the Zanders' *pro se* status, the surviving counterclaims will not be dismissed on the basis of Rule 8(a) violations.

### The Zanders May Not Assert Corporate Claims

■ The January Opinion held that the Zanders could not assert claims on behalf of their corporations Western Oil & Refining Company ("Western") and Tanner Square. The Zanders have responded to this by re-alleging many of their former corporate claims as personal claims. As explanation for this course of action, they allege that they as individuals were made parties to the Representative Agency Trade Agreement (the "Agreement"), the contract between Western and CITC out of which many of the claims arise, and alternatively that they are entitled to collect for CITC's breach as third-party beneficiaries of the Agreement.

---

1. The third-party complaint also alleges the same thirteen claims against Citibank, incorporating by reference the respective paragraphs of the counterclaim. To avoid confusion, all references in this opinion to the Zanders' counterclaims should be deemed to apply equally to their third-party complaint unless otherwise noted.

The claim that the Zanders were made parties to the Agreement is based on the allegation that:

On or about August 1987, Plaintiff agreed to perform its duties and obligations under the Agency contract on behalf of Defendants as consideration for Defendants executing the promissory note. Ed Kowalcyk, legal counsel for Citibank, specifically stated that all of the duties performed by Plaintiff and its parent Citibank for Western also were performed for Defendants as individuals and that CITC and Citibank were the Defendants' Agent.

Counterclaim ¶ 196.

However, the Zanders cannot rely on this alleged oral modification to the Agreement to support their claims on behalf of Western. The Agreement was between Western and CITC, and made no reference to the Zanders as individuals. In Article 5.1, it provided that "this Agreement may only be amended or modified by an appropriately captioned written agreement duly executed by both parties." The Zanders have not alleged that there was ever any writing reflecting the August 1987 modification to the Agreement.

Under § 2–209 of the U.C.C., if a written contract prohibits modification except in writing, it may not be modified orally: "A signed agreement which excludes modification ... except by a signed writing cannot otherwise be modified...." Similarly, § 15–301(1) of the New York General Obligations Law states:

A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by its agents.

Here, there can be no doubt that the alleged oral contract was executory, as the asserted agreement was that CITC would perform all of its duties and obligations under the Agreement for the personal benefit of the Zanders as individuals. Therefore, both statutory provisions cited above compel the conclusion that the oral modification is unenforceable, and the Eleventh Counterclaim must be dismissed.[2]

As for the Zanders' claim that they were intended third-party beneficiaries under the Agreement,

Essential to status as an intended beneficiary under [§ 302(1) of the Restatement (Second) of Contracts] is either that "performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary" or that "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 485 N.E.2d 208 (1985). Here the Zanders have not asserted that CITC owed them anything prior to the time the Agreement was signed, nor have they alleged any facts which would indicate the requisite donative intent. Hence their assertion that they were intended third-party beneficiaries must be rejected and the Twelfth Counterclaim must be dismissed.

Therefore, the Zanders are not entitled to recover for breach of the Agreement or any other torts alleged to have been committed against Western or Tanner Square.

Nevertheless, because the allegations of wrongdoing by CITC with respect to the Agreement and Western are relevant to CITC's motivation and intent in dealings with the Zanders, the allegations themselves will not be stricken.

---

**2.** While estoppel may prevent a party from relying on § 15–301 to deny an oral modification to a contract, this generally requires that the party seeking to enforce the modification show substantial reliance on the modification. *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 397 N.Y.S.2d 922, 366 N.E.2d 1279 (1977). However, this exception applies only where the enforcing party has partially performed under the modification and "only if the partial performance be unequivocally referable to the oral modification...." *Id.* at 343, 397 N.Y.S.2d 922, 366 N.E.2d 1279. The Zanders' allegations here do not satisfy this test, and therefore their attempt to enforce the alleged oral modification must fail.

*The Causes of Action Affected by the Dismissal of the Corporate Claims*

█ The Causes of Action in the Amended Counterclaim which assert claims on behalf of Western, and which are therefore dismissed, are the First, Third, Seventh, Ninth, Tenth and Thirteenth. The First is based on CITC's alleged failure to perform under the Agreement and its subsequent attempts to conceal the breach.

█ Both the Third and Seventh causes of action relate to dealings between Western and a third party, Phibro Energy, Inc. ("Phibro"). In the Third, the Zanders allege that CITC's breach of the Agreement prevented Western from satisfying its obligations to Phibro, which resulted in a lawsuit by Phibro in which Phibro sought to hold the Zanders personally liable for Western's default. The damages alleged are the costs of defending this lawsuit. However, the fact that the damages may have been suffered by the Zanders personally is irrelevant to the issue of whether they may pursue CITC for breach of the Agreement. The Seventh counterclaim alleges that CITC's misrepresented Phibro's experience and ability to deal with Western and also that CITC had no experience in the type of transactions required by the Agreement. Again, this is simply a claim that CITC did not properly perform its duties under the Agreement.

The Ninth counterclaim is essentially the same as the First, with additional allegations based on Zander's asserted position as the first American Black to have been awarded a crude oil contract by a major petroleum exporting nation. As this counterclaim is based on CITC's breach of the Agreement, it must be dismissed.

Finally, the Tenth counterclaim is based on a breach of warranty in connection with the Agreement, and as such must also be dismissed.

Therefore, the First, Third, Seventh, Ninth and Tenth counterclaims must be dismissed.

█ In addition, the Zanders' Eighth counterclaim alleges primarily that CITC fraudulently concealed its breach of the Agreement. To the extent that this claim alleges facts which might establish motive for fraudulent inducement of the Note it is appropriate, but insofar as it states a claim for recovery on the underlying breach it must be dismissed.

*The Second Counterclaim States a Valid Claim for Fraudulent Inducement*

█ In their Second counterclaim, the Zanders assert that CITC concealed its previous breach of the Agreement in order to induce the Zanders to sign the Note and thereby personally guarantee payment of the damages which Western suffered as a result of CITC's breach. They also allege that CITC fraudulently attempted to extract indemnifications and releases from them by representing that it intended to continue doing business with Western, and that there were certain conditions placed upon their execution of the Note which CITC has not fulfilled.

CITC argues that this counterclaim does not allege fraud with the particularity required by Rule 9(b). More precisely, CITC asserts that the counterclaim does not plead scienter, pointing to three of the paragraphs which contain conclusory assertions concerning CITC's knowledge at the time of the alleged fraud.

However, CITC's argument ignores the numerous allegations in the paragraphs preceding the admittedly conclusory allegations, which contain adequate factual detail to support the knowledge ascribed to CITC:

26. On or about July 1987, Alan Weiss, President of CITC ... performed an investigation and detailed audit of the Citibank letter of credit department to ascertain responsibility for the problems with the issuing of the letters of credit.

27. The investigation specifically identified Citibank as the cause of all problems.... Mr. Weiss communicated the results of his investigation to Mr. Gerald V. Horah, a vice president of both CITC and Citibank, as well as to more senior officers of Citibank.

....

39. On or about July 1987, Gerald V. Horah learned of the breach of Citibank

but was specifically instructed not to reveal the results of the investigation and audit of the Citibank letter of credit department to Defendants.

40. On or about July 1987, Gerald V. Horah and other employees of CITC were specifically threatened by Mr. Weiss that their careers with the Citibank organization depended upon Defendants never finding out about the problem with the letters of credit.

41. On or about July 1987, Mr. Horah and others were ordered to cooperate with "the Bank" in getting the Defendants to both personally guarantee all funds advanced by Citibank and to indemnify Plaintiff and all of its affiliates against prosecution for its negligence in failing to facilitate the now aborted transaction should said negligence ever be discovered by Defendants in the future.

Amended Counterclaim at 7–11. These allegations are all quite specific as to how and when CITC acquired the knowledge in question. Therefore, the fraud claim adequately pleads scienter and will not be dismissed.

*The Fourth Counterclaim Does Not State A Claim*

██ In their Fourth Counterclaim, the Zanders allege that CITC personnel were responsible for an unsuccessful attempt to bribe the NNPC in order to buy time for CITC to comply with its duties under the Agreement. As pled, this counterclaim asserts a violation of the Foreign Corrupt Practices Act ("FCPA"). In the January Opinion, a less detailed version of this counterclaim was dismissed with the comment that

> While the FCPA itself neither contains nor implies any private cause of action for damages, *see McLean v. International Harvester Co.,* 817 F.2d 1214, 1219 (5th Cir.1987), that question need not be decided at this time, as the pleading is insufficiently particular to state a claim.

January Opinion at 13. As repled, the counterclaim is sufficiently particular, identifying the alleged briber, the person to whom the bribes were offered, and the motive for offering the bribe. Therefore, it is now necessary to determine whether an FCPA violation can support a private tort claim.

While this issue has never been addressed by the Second Circuit, the few cases that have addressed the question have concluded that no private right of action ought to be implied. *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024 (6th Cir. 1990); *McLean, supra,* 817 F.2d at 1219; *see also Shields ex rel. Sundstrand Corp. v. Erickson,* 710 F.Supp. 686, 688 (N.D.Ill. 1989) (no private right under FCPA provisions requiring adequate financial and accounting controls); *Lewis v. Sporck,* 612 F.Supp. 1316, 1332–33 (N.D.Cal.1985) (same).

To decide this question, it is necessary to apply the four part test set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). The four factors which are to be considered are: (1) whether the plaintiff is "one of the class for whose *especial* benefit the statute was enacted;" (2) whether the legislative history indicates an intent to create or deny an action; (3) whether creation of a private right would be consistent with the underlying purposes of the legislation; and (4) whether "the cause of action is one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.*

With respect to the first factor, the FCPA is primarily intended to prevent bribery of foreign officials and to protect businesses from having competitors gain an advantage by offering such bribes. The law is not necessarily intended to protect individual businesses from the backlash of having an attempted bribe to a foreign official rejected. The relevant question here is whether prior to the enactment of the FCPA Western would have had any recourse against CITC's behavior. The answer is in the affirmative: CITC's attempts to bribe the NNPC could form the basis of an action for breach of good faith in performing under the Agreement or for tortious interference with contractual rela-

tions. Of course, the Zanders disavow any participation in the bribery scheme here. Nevertheless, it cannot really be said that the Zanders would be within the group for whose particular protection the FCPA was enacted.

As for the second and third factors, the analysis of these issues in *Lamb*, 915 F.2d at 1029–30, which determined that a private right of action was not suggested by the legislative history and that it would not be consistent with statute's purposes, applies with equal force here. Finally, the claim which the Zanders seek to assert here is in fact one traditionally relegated to state law, namely tortious interference with a business relationship or prospective business relationship.

Thus, evaluation of the *Cort* factors leads to the conclusion that no private right of action exists under the FCPA.

■ However, while the counterclaim may be inadequate under the FCPA, it may yet survive if its allegations can establish a different claim. In view of the preceding discussion, and particularly the conclusion that state law generally covers this type of behavior, it is appropriate to consider whether it states tortious interference claim. Because Western was the entity which had contracted with NNPC, the Zanders cannot allege that CITC's action constituted tortious interference with contractual relations.

■ The counterclaim might be construed, however, to allege a claim for tortious interference with prospective business relations between the Zanders and NNPC. Relevant in this regard is that, after the arrangement between NNPC and Western had collapsed, NNPC agreed to offset Western's indebtedness to it in exchange for Zander personally accepting a lifetime banishment from acting as a contract buyer of Nigerian crude oil. However, the counterclaim does not plead facts sufficient to indicate that the alleged bribe attempt was solely responsible for the alleged damages. In other words, Zander has not alleged that were it not for the bribe attempt he would have had an opportunity for future dealings with NNPC.

Therefore, this counterclaim does not state a claim for tortious interference with a prospective business relationship.

### The Fifth Counterclaim Fails To State A Claim For Conspiracy To Defraud

■ The Zanders' Fifth counterclaim alleges that CITC conspired with others, including Theodore Adams ("Adams"), to mount a litigation offensive which would deplete their resources and attach their assets. The Zanders characterize this counterclaim as one for "conspiracy to defraud." However, without determining whether they have alleged facts to support a conspiracy, they have not adequately alleged fraud by any of the conspirators. Their claim is basically that Adams improperly pressed a lawsuit and sought default judgment at a time when he knew that they were occupied elsewhere in litigation, and that even after the default was reversed on appeal he refused to return assets which he seized after obtaining the default. There are no allegations here which establish fraud on the part of Adams or any of the other alleged co-conspirators. Therefore, this claim must be dismissed.

### The Sixth Counterclaim is Redundant

■ The Zanders' Sixth counterclaim essentially repeats the allegations of the Second counterclaim, asserting that CITC fraudulently induced the Zanders to sign the Note and to pledge their interest in the Phoenix property as collateral. While CITC has established that the Zanders were not the titleholders of the property at the time the Note was signed, the Zanders have presented evidence that they had an interest in the property through the legal titleholders, who purchased the property as their nominees and on their behalf.

Because the underlying claim here, that CITC fraudulently induced the Note by concealing its earlier breach of the Agreement, is the same as the Second counterclaim, this counterclaim will be dismissed as redundant. The Zanders may assert their damages resulting from impairment

of their interest in the property as damages on the Second counterclaim.

### The Thirteenth Counterclaim is Also Redundant

■ CITC argues that the Zanders' Thirteenth counterclaim is based on intentional infliction of emotional distress, and that it must be dismissed due to failure to plead the requisite elements of that tort. The Zanders disavow this characterization of the counterclaim and assert that they have properly pled a claim for pain, suffering and emotional distress as "the unintentional but predictable and proximate cause" of CITC's fraudulent conduct. Given this description, the counterclaim will be dismissed as repetitive of the Second counterclaim, with the Zanders being permitted to seek damages on that counterclaim for their alleged pain and suffering.

### The Third–Party Complaint Alleges a Claim for Piercing the Corporate Veil

■ The Zanders' Third–Party Complaint (the "Complaint") is, as mentioned above, similar in its causes of action to the Amended Counterclaim. The initial allegations of the Complaint set forth facts which the Zanders assert are sufficient to hold Citibank liable either as a principal actor in the alleged fraud or as CITC's parent under the doctrine of "piercing the corporate veil."

The January Opinion addressed the Zanders' previous attempt to plead such a claim as follows:

> None of the allegations alleges a claim for piercing the corporate veil between CITC and Citibank. In order to do so, the plaintiff must allege that the subsidiary was so dominated by its parent as to be a "mere instrumentality." *See Fisser v. International Bank*, 282 F.2d 231, 234 (2d Cir.1960); *Fidenas A.G. v. Honeywell, Inc.*, 501 F.Supp. 1029, 1036 (S.D.N.Y.1980). The defendants must therefore allege that CITC was so dominated by Citibank, at least with respect to the Western transactions, that it had no separate will of its own and that it was a mere instrumentality of its parent.

> Courts observe that the following factors are relevant to that determination:
> 
> > (1) the absence of the formalities which are part and parcel of normal corporate existence, i.e., the issuance of stock, the election of directors, the keeping of corporate records, etc., (2) inadequate capitalization, (3) personal use of corporate funds, and (4) the perpetration of fraud by means of the corporate vehicle.
> 
> *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984); *Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 702 F.Supp. 1005, 1019 (S.D.N.Y.1988). As the Zanders have not made the necessary allegations here, they have not stated a claim against Citibank.

January Opinion at 15–16.

The Zanders have now remedied the shortcomings which were identified in their prior pleading. For example, they have alleged that CITC "was a mere instrumentality of Citibank and was so dominated by Citibank as to have no will of its own or ability to answer for itself." Complaint ¶ 5. While they do not assert that CITC was inadequately capitalized or that any Citibank personnel made personal use of CITC's funds, these were identified in the January Opinion not as essential elements but rather as factors which might be relevant to the ultimate determination of whether to pierce the veil.

■ CITC also argues that the Zanders' allegations are conclusory and inadequately supported by the facts. However, as the allegations in question do not relate to fraud, there is no particularity requirement and the Zanders need only satisfy Rule 8(a). This they have done by setting forth a short and concise statement of the facts which are necessary to support their claim to pierce the veil. It is inappropriate at this stage of the pleadings to attempt to evaluate the evidence or to determine whether the Zanders will ultimately succeed in supporting their allegations.

Therefore, the Complaint will not be dismissed, although the individual causes of action will be disposed of in the same fash-

ion as the respective causes of action in the Amended Counterclaim.

## THE ZANDERS' MOTION TO DISMISS

 The Zanders move to dismiss CITC's complaint for failure to comply with discovery requests and orders, or in the alternative for an order compelling CITC to respond to the discovery requests. Primarily, the Zanders rely on the failure of CITC personnel to appear for scheduled depositions and CITC's refusal to produce documents requested by the Zanders in February of this year.

CITC does not deny that it has not submitted to depositions or responded to the Zanders' discovery requests. Instead, it relies on a stipulation entered on October 1, 1988 (the "Stipulation") in which the Zanders agreed not to notice any discovery until they had responded to CITC's then-outstanding document request and had themselves submitted to depositions. CITC asserts that because the Zanders have produced fewer than 700 pages of documents in response to the document request referenced in the Stipulation they have not satisfied the terms of the Stipulation and CITC need not respond to their discovery requests. CITC also cross-moved for a stay of discovery pending the resolution of its motion to dismiss.

While it appears that CITC has been somewhat less than avid in meeting its discovery obligations, dismissal of its complaint is not warranted here. The preceding resolution of the motions to dismiss establishes that the Zanders have properly stated claims against CITC. The Zanders have also implicitly, if not explicitly, represented that they have produced all of the documents in their control which are responsive to the request referred to in the Stipulation. Therefore, there is no reason for either party to delay discovery further.

The motion to dismiss for failure to comply with discovery is denied, and both parties are hereby directed to proceed with discovery.

## CONCLUSION

For all of the foregoing reasons, CITC's motion to dismiss the Amended Counter-

claim and Amended Complaint is granted in part and denied in part. Leave is hereby granted to the Zanders to replead their Counterclaim and Third–Party Complaint for the sole purpose of clarifying and consolidating only those claims and allegations which have been approved in this opinion.

The Zanders' motion to dismiss is denied.

It is so ordered.