TELVEST, INC. and Harold
Sampson, Plaintiffs,

v.

WISCONSIN REAL ESTATE INVESTMENT TRUST, George Weinstein, Robert C. Pittelkow, August J. Richter, Joseph A. Deglman, Robert G. Stenger, Clarence Wallner, Thomas W. Korb, Jane Carity, Reit Property Managers, Ltd., Stanley H. Weinstein, Defendants,

and

Clyde William Engle and Charles F. DiGiovanna, Counterclaim Defendants.

Civ. A. No. 80–C–410.

United States District Court,
E. D. Wisconsin.

May 23, 1980.

Richard K. Sell, Richard C. Ninneman,
Michael T. Hart and James W. Mohr, Jr.,

Milwaukee, Wis., for plaintiffs and counterclaim defendant Engle; Whyte & Hirschboeck, S.C., Milwaukee, Wis., and Nathan Dardick, Dardick & Jadwin, Chicago, Ill., of counsel.

Robert B. Peregrine and Alan Marcuvitz, Peregrine, Marcuvitz, Cameron & Peltin, S.C., Milwaukee, Wis., Justin W. D'Atri, Baskin & Sears, New York City, for defendants.

Charles F. DiGiovanna, counterclaim defendant, has not as yet been served and, consequently, there is no appearance for him.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiffs Telvest, Inc., and Harold Sampson have moved the court for a preliminary injunction prohibiting the trustees of the Wisconsin Real Estate Investment Trust ("WREIT") from voting proxies allegedly solicited in violation of § 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), and SEC Rule 14a-9(a), 17 C.F.R. § 240.14a-9. Plaintiffs also seek to enjoin WREIT from making certain payments to its property management company, REIT Property Managers, Ltd., ("RPM") which are alleged to be prohibited by WREIT's trust declaration. Defendants have counterclaimed, seeking to prevent plaintiffs from voting proxies allegedly solicited in violation of the Exchange Act and the implementing rules and regulations. This court has jurisdiction over the dispute pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa.

FACTS

WREIT is a common law business trust formed in 1960 for the purpose of investing in real estate properties. WREIT's principal place of business is Milwaukee, Wisconsin, and it is subject to the laws of the State of Wisconsin.

WREIT is governed by a nine person Board of Trustees. The trustees are elected annually by the shareholders of the trust. There are currently approximately 3,000 shareholders of record and 1,540,000 shares outstanding.

The day-to-day operations of WREIT are managed by a property manager retained by the Board of Trustees. Since 1975, RPM has acted as WREIT's property manager.

RPM is compensated by WREIT pursuant to a management agreement entered into by the parties on an annual basis. According to the management agreement for the year 1980, RPM is to receive a flat fee for its services in addition to certain incentive payments based on a percentage of the trust's earnings. In addition to these payments, RPM is to receive one-half of any co-brokerage commissions it receives from the purchase or sale of trust property. These commissions are not credited against RPM's other management fees.

In addition to the fees specified in the management agreement, RPM has on occasion received other payments from WREIT. By letter agreements dated June 14, 1978 and February 21, 1980, it was agreed that certain commissions received by RPM with respect to certain trust property could be retained in full by RPM rather than shared with WREIT. In addition, on January 28, 1980, the Board of Trustees voted to pay RPM $91,000 for "extraordinary services" in connection with the purchase of certain investment properties located in Mississippi and New York. This payment was not required by the management agreement or any other contract or understanding between the parties. In 1979, the total amount paid to RPM was $556,360.

RPM is a Wisconsin corporation with its principal office in Milwaukee, Wisconsin. All of the stock in RPM is owned by defendant Stanley Weinstein. The president of RPM is George Weinstein who is also a trustee and president of WREIT and a defendant in this lawsuit. George Weinstein is the father of Stanley Weinstein.

RPM channels all funds received for its services to an entity known as Weinstein Associates. Weinstein Associates is a general partnership whose partners are George Weinstein and Stanley Weinstein.

Plaintiff Telvest, Inc., is a Delaware corporation with its principal place of business

in Chicago, Illinois. Telvest is the beneficial owner of 278,000 shares of WREIT, all of which have been acquired since December 1979. This represents approximately 18.1 per cent of the outstanding shares of WREIT.

Telvest is a wholly-owned subsidiary of Telco Leasing, Inc., ("Leasing") which itself is a wholly-owned subsidiary of Technical Equipment Leasing Corp. ("Telco"). Approximately 92 per cent of the outstanding stock of Telco is owned by Libco Corp. The president and chairman of the board of Libco is Clyde William Engle. Engle owns or controls approximately 60 per cent of Libco's outstanding stock.

In February 1980, Telvest proposed that Engle and Roger Weston be selected as management nominees to the Board of Trustees of WREIT. This request was denied. Subsequently, Telvest joined with two other WREIT shareholders, Harold Sampson and Charles DiGiovanna, to form the WREIT Shareholder's Protective Committee (the "Committee"). The purpose of the Committee is to wrest control of WREIT from the current Board of Trustees. In furtherance of this end, the Committee has named its own slate of candidates for the Board of Trustees and has been actively soliciting proxies in advance of the annual meeting scheduled for June 10, 1980. Neither Engle nor Weston has been nominated for trustee.

On April 10, 1980, Telvest filed a Schedule 13D amendment with the Securities and Exchange Commission and WREIT, stating that it intended to run an opposition slate of trustees at the annual meeting. On April 18, 1980, the Trustees voted to issue 27,000 shares of WREIT to RPM in satisfaction of the $91,000 payment authorized earlier in the year. This represented approximately 2 per cent of WREIT's outstanding stock.

On April 25, 1980, WREIT management sent shareholders a proxy solicitation letter and statement containing a list of management nominees and warning shareholders about the expected challenge from the Committee. The Committee sent out its proxy solicitation letter and statement on May 3, 1980. This action was commenced on May 6, 1980. Exhibits submitted at the time the case was filed and supplemented by affidavits and exhibits submitted at a hearing held on May 21, 1980, provide the basis for most of the above facts.

Defendants' counterclaim was filed on May 19, 1980. On the basis of the exhibits attached to the counterclaim, the Court further finds as follows: (1) On April 30, 1980, the Securities and Exchange Commission entered into consent decrees with Clyde William Engle, Telco, and Libco, thereby terminating enforcement proceedings brought against those parties as a result of various alleged violations of the federal securities laws. (2) Engle has pledged all of the common stock of Libco to the Bank of Lincolnwood, Illinois, to secure a demand loan made by the bank to Mr. Engle. A default on the loan could result in foreclosure of the pledged stock and potentially a change in control of Libco ownership. (3) Richard Jones, one of the Committee's nominees, for trustee, is a member of a law firm which represents Telvest in this proceeding. Another of the Committee's nominees, Dr. Gerald Kien, was a candidate of Telvest in 1979 in connection with a proxy solicitation involving a different company. (4) Telvest owns 10 per cent of the outstanding shares of Indiana Financial Investors, Inc., a real estate investment trust. (5) Engle was an officer of two companies which during his tenure sought relief under Chapter XI of the Federal Bankruptcy Act.

PLAINTIFFS' CLAIM

Plaintiffs seek to prohibit defendants from voting proxies obtained pursuant to the April 25, 1980, solicitation on the ground that such solicitation was false and misleading. Plaintiffs point to two omissions which they deem material: (1) the failure to state that certain payments made to RPM (such as the co-brokerage fees and the $91,000 stock payment) were prohibited by the trust declaration, and (2) the failure to disclose that payments to RPM are funnelled to Weinstein Associates of which George Weinstein (a trustee and the president of WREIT) is a general partner.

SEC Rule 14a-9, which is given force of law by § 14(a) of the Exchange Act, provides:

"No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false and misleading."

■ The test of whether an omitted fact is material is contained in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976):

"* * * An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. * * It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

■ Applying this test to defendants' failure to inform the shareholders that certain payments to RPM violated the trust declaration, I find that there was no omission of material fact. The disputed payments themselves were disclosed. What plaintiffs complain of is defendants' failure to also state that these payments were unlawful. Defendants were under no obliga-

tion to make such a statement. The issue of whether the payments violated the trust declaration is hotly disputed. The relevant portions of the trust agreement are capable of varying interpretations. Under these circumstances, defendants were only required to disclose that the payments were made. Once this fact is known, the shareholders are free to draw their own conclusions as to whether the trust declaration has been violated. See, e.g., *Nemo v. Allen*, 466 F.Supp. 192, 195 (S.D. N.Y. 1979).

■ The failure to disclose that payments from WREIT to RPM were subsequently funnelled to Weinstein Associates is a more serious matter. While the April 25 proxy statement discloses that George Weinstein, a trustee and president of WREIT, is also president of RPM, it is also stated that Stanley Weinstein owns all of the outstanding stock of RPM. The clear impression is given that only Stanley Weinstein has a direct financial interest in RPM (besides any compensation paid to George Weinstein in his capacity as president). The fact is, however, that George Weinstein has a direct interest in RPM's financial wellbeing for he receives a share of RPM's earnings as a partner in Weinstein Associates. Since one of the major points of contention between present management and the Committee is the trust's dealings with RPM, a reasonable shareholder might well find it significant that the trust's president and a member of the Board of Trustees has a direct financial interest in an entity that was paid over half a million dollars by the trust in 1979. Failure to disclose this fact was a material omission and a violation of § 14(a).

Plaintiffs also seek an order declaring the $91,000 stock payment to RPM a violation of the trust declaration and prohibiting the 27,000 shares obtained by RPM from being voted at the annual meeting. Defendants have agreed to refrain from voting the shares. This being the case, there is no need to decide one way or another at this stage in the proceedings whether the issuance of those shares violated the trust agreement.

■ Finally, plaintiffs seek to enjoin any further payments of fees, commissions, or other remuneration to RPM. This request will be denied as plaintiffs have an adequate remedy at law and as it appears that the trust would suffer irreparable harm were it to suddenly lose the services of its property manager. Complicated questions of contract interpretation involving a course of dealing going back five years should only be resolved by motion for preliminary injunction in the direst circumstances. Since plaintiffs, if they ultimately prevail, can be made whole by an award of damages, there is no need to resort to extraordinary relief.

## DEFENDANTS' COUNTERCLAIM

Defendants seek to enjoin the Committee from voting their proxies on the ground that the proxy statements sent out on May 3, 1980, contain omissions of material fact. All of the omitted facts cited by the defendants have to do with the past or current operations of Telvest and its parents or the relationships between Telvest and certain of the Committee nominees.

There is no doubt that Telvest and Mr. Engle may be deemed to be "participants" in the proxy solicitation as that term is defined in SEC Rule 14a-11(b), 17 C.F.R. § 240.14a-11(b). Persons and entities who are deemed participants in a proxy solicitation are required to file a Form 14B with the Securities and Exchange Commission, containing certain information concerning general background and relationships with the issuer. Schedule 14B's have been filed in connection with the WREIT proxy battle by Telvest, Leasing, Telco, Libco, and Mr. Engle. There has been no allegation that these filings are false or misleading or that they fail to disclose material facts. The only contention pressed by the defendants is that the same information should have been included in the proxy statement sent to the shareholders.

■ I find this contention without merit. SEC Rule 14a-101, 17 C.F.R. § 240.14a-101, entitled "Information required in proxy statement" does not require any disclosure concerning the general background of a participant or its relationships with the issuer beyond what was included in the May 3, 1980, proxy statement. Defendants have produced no authority to substantiate their claim that participants must provide the sort of detailed disclosure urged here. Telvest and its parents are shareholders of the trust and are backing an alternative slate of nominees for the Board of Trustees. Neither Telvest nor Mr. Engle are nominees nor are they currently in any sort of management or fiduciary position with respect to the trust. No disclosure beyond that already made is required. Accordingly, defendants' counterclaim for a preliminary injunction will be denied.

## RELIEF

The annual meeting of the WREIT shareholders is scheduled for June 10, 1980. Both sides have urged that the meeting not be postponed or cancelled. Since there remains enough time to institute less drastic corrective measures, the meeting may proceed as scheduled.

■ Having considered the various forms of relief open to the court, I have determined that the most equitable course is to void the proxies obtained by both management and the Committee. If the slate is cleaned, the shareholders will be able to consider all of the relevant information at one time and be able to come to an informed conclusion on the basis of such information. While it is true that only management has been guilty of omitting material facts from its earlier proxy statement, it is too harsh a remedy to void only management's proxies. Management will, however, be required to send this decision and order to all of its shareholders. Also, in accordance with the agreement of the parties, defendants will be enjoined from voting the 27,000 shares recently issued to RPM.

## ORDER

IT IS THEREFORE ORDERED that no proxy solicited by any of the parties to this

256

lawsuit prior to the filing date of this order shall be voted at the annual meeting of the WREIT shareholders scheduled for June 10, 1980.

IT IS FURTHER ORDERED that the proxy statement dated April 25, 1980, circulated among the WREIT shareholders by the defendants, is declared to be materially false and misleading, in violation of § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a).

IT IS FURTHER ORDERED that defendants are enjoined from any further solicitation of proxies herein unless and until defendants shall have circulated amended proxy materials which shall comply with this court's findings of fact and conclusions of law, and all other applicable provisions of the federal securities laws. Such amended proxy materials shall include a copy of this decision and order.

IT IS FURTHER ORDERED that defendants are enjoined from casting votes at the June 10, 1980, meeting represented by the 27,000 shares of beneficial interest issued on April 18, 1980, to RPM.