748 F.Supp. 1336 (1990)
Alfred N. KOPLIN, Plaintiff,
v.
LABE FEDERAL SAVINGS AND LOAN ASSOCIATION, Donald E. Klein, Mary Jane Klein, Robert E. Klein, Lowell Stahl, William Cahill, Jr., James R. Sneider, Sam Huska, Thomas Edwards, and Vincent A. Field, Defendants.
No. 90 C 2372.
United States District Court, N.D. Illinois, E.D.
October 31, 1990.
*1337 Michael B. Roche, L. Andrew Brehm, Schuyler, Roche & Swirner, Chicago, Ill., for plaintiff.
Brian Crowe, Michael J. Philippi, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for defendants.

ORDER
BUA, District Judge.
Plaintiff's complaint speaks of securities law and state law violations in connection with purchases of stock in a savings and loan association. Defendants move to dismiss the complaint in its entirety. With respect to Count I, defendants' motion is granted in part and denied in part. With respect to Count II, defendants' motion is granted. Defendants' motion is denied as to Counts III-VII.

FACTS
Plaintiff Alfred N. Koplin brings a seven count complaint against defendants Labe Federal Savings and Loan Association ("Labe"), Donald E. Klein ("Klein"), Mary Jane Klein, Robert E. Klein, Lowell Stahl, William Cahill, Jr., James R. Sneider, Sam Huska, Thomas Edwards, and Vincent A. Field. Labe is a federal savings and loan association located in Chicago, Illinois. The remaining defendants are directors and/or officers of Labe.
For purposes of a motion to dismiss, all well-pleaded facts in the complaint must be *1338 accepted as true and all reasonable inferences must be drawn in the light most favorable to the plaintiff. Powe v. City of Chicago, 664 F.2d 639, 642 (7th Cir.1981). In late October 1988 or early November 1988, Koplin expressed his interest in acquiring equity in a savings and loan association to representatives of Harris Bank and Trust Company. Those representatives indicated that Labe might be available for purchase and agreed to put Koplin in contact with Labe. On November 4, 1988, Klein, the president of Labe, telephoned Koplin. Klein told Koplin that he wanted to sell Labe stock for $11.00 per share. Either during that same conversation or during further discussions at a meeting on November 8, 1988, Klein told Koplin that Labe was having difficulties with a dissident shareholder; Labe was seeking an investor to purchase the shareholder's 10% interest in Labe; and the stock price was $11.00 per share. Koplin told Klein that he was not interested in becoming a minority shareholder in Labe; rather, he wanted a controlling interest. Klein responded by offering to arrange a sale of 80% of Labe stock for $11.00 per share. Two days later, Klein explained to Koplin that the price per share would be $11.20 if an 80% interest were to be purchased. Klein represented that Labe could cause the sale of 80% of its stock for $11.20 a share. Koplin accepted the offer. Koplin sent Klein a letter on November 11, 1988 formally stating his intention to purchase 80% of Labe stock contingent on approval from appropriate federal and state agencies, approval from Labe shareholders and directors, and an acceptable contract between both parties. Koplin also sent an application to the Federal Home Loan Bank Board ("FHLBB") to solicit approval for acquisition of more than 10% of Labe stock.
Koplin began to buy Labe stock on the open market. During a period extending from December 1, 1988 to February 23, 1989, Koplin purchased shares equaling a 9.98% interest in Labe for approximately $8.85 per share. Koplin's inquiries seeking approval for purchase of an 80% interest, though, were repeatedly ignored. He was prevented by the directors from presenting his purchase proposal at the shareholder meeting on March 22, 1989. Around May 15, 1989, Labe and its board of directors sent a letter to the FHLBB opposing Koplin's bid to obtain more than 10% of Labe stock. Koplin subsequently withdrew his application from the FHLBB.
Koplin alleges numerous material omissions and misrepresentations by Labe, Labe's board of directors, and Klein. He asserts that Klein and Labe failed to disclose that the dissident shareholder had filed suit against Labe and certain of its officers and directors alleging securities violations ("Greenblatt litigation"). Additionally, Klein failed to disclose that Labe had agreed to settle the action by purchasing the shareholder's stock and paying a portion of the shareholder's attorney's fees ("Greenblatt settlement"). Koplin claims that Labe, through Klein, misrepresented its willingness to arrange and support Koplin's acquisition of 80% of Labe stock. Labe did not disclose that it was actively pursuing other purchasers for the dissident shareholder's stock. Nor did Labe disclose that its charter prohibited any person from acquiring more than 10% of Labe stock.
Koplin alleges that he acted in reliance on the facts as he believed them. He asserts loss in an amount equal to the difference between the present market value of the stock comprising his 9.98% interest in Labe and its value on the date of purchase; the potential profits from his investment; and the costs and expenses associated with the preparation and submission of his FHLBB application.
Defendants seek to dismiss the whole of Koplin's complaint. Defendants argue that Counts I, II, and IV should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and Counts III, V, VI, and VII should be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction.

ANALYSIS

I. Securities Law Violations
In Counts I and IV, Koplin alleges violations of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b)[1], *1339 and of Rule 10b-5, 17 C.F.R. § 240.10b-5.[2] To establish § 10(b) or Rule 10b-5 claims, Koplin must show that defendants "(1) made an untrue statement of material fact or omitted a material fact that rendered the statements made misleading, (2) in connection with a securities transaction, (3) with the intent to mislead, and (4) which caused plaintiff's loss." Schlifke v. Seafirst Corp., 866 F.2d 935, 943 (7th Cir.1989).
Both transaction and loss causation must be shown in order to satisfy the causation element of § 10(b) or 10b-5 claims. Transaction causation examines whether plaintiff would have engaged in the transaction but for defendants' misrepresentations or omissions. To establish transaction causation, a plaintiff must show that defendants' misrepresentations or omissions caused plaintiff to make the investment at issue. Kayne v. PaineWebber Inc., 703 F.Supp. 1334, 1342 (N.D.Ill. 1989). Loss causation looks at whether plaintiff would have incurred the harm or loss of which he complains but for defendants' wrongdoing. Bastian v. Petren Resources Corp., 892 F.2d 680, 685 (7th Cir.), cert. denied, ___ U.S. ___, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990). "Loss causation means that the investor would not have suffered a loss if the facts were what he believed them to be." LHLC Corp. v. Cluett, Peabody & Co. Inc., 842 F.2d 928, 931 (7th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988). In this case, plaintiff's inability to distinguish and plead both transaction and loss causation proves detrimental to portions of his claims.

Count I
Plaintiff Koplin's §§ 10(b) and 10b-5 claims in Count I involve basically two transactions: (1) his acquisition of 9.98% of Labe stock and (2) his potential purchase of 80% of Labe stock. The §§ 10(b) and 10b-5 analysis will be applied to each in turn.
With regard to the 9.98% stock purchase, plaintiff satisfies the first element of a § 10(b) or 10b-5 showing by alleging numerous misrepresentations and omissions that supposedly affected his purchase. These misrepresentations include Labe's acknowledgement, through Klein, that 80% of Labe could be purchased, and Klein's offer to assist the purchase. The omissions consist of failure to disclose information regarding the Greenblatt litigation and settlement. These misrepresentations and omissions are material in that a reasonable investor would expect to have that information available when making decisions. TSC Industries Inc. v. Northway, Inc., 426 U.S. 438, 448, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).
Second, Koplin claims a recoverable loss. He alleges monetary loss resulting from a decrease in market value of the price of his Labe stock from its purchase date. A loss in market value is actionable as actual damages if both transaction and loss causation can be shown. Koplin satisfies the transaction causation requirement by showing either that he would not have entered into the 9.98% acquisition unless he believed that he could purchase 80% of the stock or unless he believed Labe to be free from suit.
Turning to loss causation, the loss Koplin complains of is a decrease in the market value of the shares he purchased. If the decrease in the value of his shares is only due to market forces such as changes induced by the nationwide savings and loan fiasco, loss causation has not been shown. *1340 Bruschi v. Brown, 876 F.2d 1526, 1530 (11th Cir.1989) ("If the particular loss complained of is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operate to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b-5"); Bastian, 892 F.2d at 685. In order to gain recovery under §§ 10(b) and 10b-5, the alleged misrepresentations or omissions must cause the decrease in the shares' market value.
In his complaint, Koplin asserts that the decrease in his shares' market value stemmed from his inability to gain control of Labe. Koplin's inability to gain control was allegedly caused by defendants' failure to follow through on their promises of allowing acquisition of 80% of Labe and their promises of support. This claim is pure speculation and does not constitute a proper basis for recovery. "Although ... damages may consist of more than out of pocket losses, a plaintiff may not recover for an entirely speculative loss of profits." Nutis v. Penn Merchandising Corp., 615 F.Supp. 486, 490 (E.D.Pa.1985) (plaintiffs' alleged injury of inability to share in profits from projected merger not sufficient basis for securities violation). Koplin does not even know if he would have gained control of Labe savings and loan association  misrepresentations or no misrepresentations. The approvals upon which the purchase was contingent were more than mere formalities. Nor is Koplin in a position to predict what difference his stewardship would have made even if he had a controlling interest in Labe. Loss causation, therefore, is not satisfied in connection with Koplin's inability to gain control of Labe.
The omission which may have caused a decrease in the market value of Koplin's shares is Labe's and Klein's failure to disclose information about the Greenblatt litigation and settlement. Labe's involvement in a securities case and a subsequent settlement out of the savings and loan association's profits could very likely have had an effect on the profitability of the association and, correspondingly, the market value of its shares. If Labe were free from suit, as Koplin believed, the market value of the stocks might not have dropped. Thus, loss causation has been plead, but only with respect to the Greenblatt litigation and settlement.
The second transaction in this case involves Koplin's potential purchase of 80% of Labe's stock. Labe's promises, through Klein, to allow and support the acquisition of a controlling interest in Labe have a bearing on this transaction. Klein's statement on behalf of Labe that 80% of the association could be bought, lack of knowledge of the 10% clause in the charter, and lack of knowledge that Labe was actively seeking other buyers may have prompted Koplin to begin the mechanics of purchasing 80% of Labe stock. With these alleged misrepresentations, Koplin satisfies the transaction causation requirement, but he still must show loss causation.
The losses alleged by plaintiff with respect to this transaction are potential profits as well as the cost of preparing and submitting his FHLBB application. Potential profits are not recoverable losses under § 10(b) and 10b-5. Recovery under the securities laws is limited to "actual damages." Sims v. Faestel, 638 F.Supp. 1281, 1283 (E.D.Pa.1986) (allegation that plaintiffs lost use of invested funds did not satisfy requirement that plaintiff plead actual injury in securities case), aff'd, 813 F.2d 399 (3d Cir.1987). Generally, potential profits are considered speculative losses because they cannot readily be predicted or quantified. In fact, Koplin makes no attempt in his complaint to numerically estimate his lost profits. Since lost profits cannot be characterized as actual damages in this case, they are not actionable.
On the other hand, any costs incurred in association with the FHLBB application may constitute actual damages. Koplin may recover the application costs as consequential losses if he can attribute the failure of his FHLBB application to defendants' actions. See Madigan, Inc. v. Goodman, 498 F.2d 233, 239 (7th Cir.1974) (consequential losses, such as broker fees, recoverable if but for misrepresentation they would not have been spent). Plaintiff can argue that he might not have incurred the *1341 costs of his application if 80% of the stock could have been purchased under the circumstances as represented by Klein and Labe and if they had supported the application as promised. Thus, loss causation can be shown, but only in connection with the loss of FHLBB application costs.
Count I is dismissed in part and remains in part. Koplin may attempt to recover the alleged decrease in the market value of his Labe shares, but only based upon a showing of the omissions of information regarding the Greenblatt litigation and settlement. In addition, Koplin may assert any claim stemming from Klein's or Labe's misrepresentations or omissions regarding the possibility of purchasing 80% of Labe stock as well as their support for the purchase, but recovery will be limited to the costs of preparing and submitting the FHLBB application.

Count IV
In Count IV, plaintiff brings an additional § 10(b) claim in connection with the 9.98% stock acquisition. Koplin alleges that defendants failed to disclose the existence of a new investment strategy which, when followed, caused the book value of Labe stocks to exceed its market value. And, this non-disclosure caused an artificial inflation in the price plaintiff paid for his Labe stock. Contrary to defendants' arguments, plaintiff does not limit his failure to disclose allegation to Labe's release of its 1990 proxy materials. Non-disclosure may have also occurred at the time that plaintiff purchased the stock, during the period from December 1988 to February 1989. Koplin satisfies the transaction causation element with his allegation that he would not have purchased 9.98% of the stock but for his understanding that the association was following certain investment strategies. The alleged loss consists of damages equal to the amount of stock price inflation. Loss causation is satisfied by the allegation that the price would not have been inflated but for failure to disclose new investment strategies. Since plaintiff satisfies the elements of a § 10(b) showing, Count IV stands.
In Counts I and IV, plaintiff seeks to extend liability for the alleged § 10(b) and 10b-5 violations to all the members of Labe's board of directors. Plaintiff claims both primary liability, premised on a conclusory statement of the existence of a fraudulent scheme, and secondary liability, under § 20(a), 15 U.S.C. § 78t(a)[3]. With regard to primary liability, Koplin only makes mention of such liability in his response to defendants' motion to dismiss. That mention does not provide any factual basis for his claim of a fraudulent scheme. Even if plaintiff supplied facts to support his allegation, a response is not the proper place to raise such a theory. Therefore, no primary liability exists with respect to Labe directors other than Klein, who is directly implicated in the complaint.
As for secondary liability, plaintiff does set forth sufficient information with respect to one misrepresentation  Labe's and Klein's promise to support Koplin's acquisition of 80% of Labe stock with the FHLBB  to state a controlling persons liability claim against all the directors.
Consensus has not yet been reached on the appropriate test for determining when persons exercise control sufficient to be considered controlling persons subject to liability. Recent opinions in this district, however, have discarded the control-by-status test. These courts have found that it is not enough, even in the pleading stage, to establish controlling persons liability by merely claiming that a person occupies a position of control within the organization. Pershing v. Sirmer, No. 89 C 2239, slip op. at 16, 1989 WL 165155 (N.D.Ill.1989). Rather, actual control must be established: a person must have the "potential for control over the specific activity upon which the primary violation of [securities laws] is *1342 predicated." Schlifke, 866 F.2d at 949-950; Craig v. First American Capital Resources, Inc., 740 F.Supp. 530, 537 (N.D.Ill. 1990). In this case, plaintiff has only plead facts sufficient to allege that members of the Labe board of directors had potential control over supporting Koplin's bid to obtain approval for acquisition of 80% of Labe stock. As evidenced by the letter sent to the FHLBB, the members of the board of directors not only had the potential to control the decision to support or oppose Koplin's application, they exercised that control. Plaintiff has not shown, however, that the directors had the potential to control matters connected with the other viable misrepresentations and omissions the omission of information regarding the Greenblatt litigation and settlement or the non-disclosure of new investment strategies. While the directors may have occupied positions where they could have had control over such disclosure decisions, plaintiff has not provided any facts which show that the directors had actual control over these matters. Therefore, § 20(a) allegations against the directors (other than Donald Klein who has sufficient claims leveled against him in the complaint to allege primary responsibility) can only be brought with regard to the FHLBB application and the losses incurred in connection with proffering that application.

Count II
Plaintiff brings a further securities violation claim under § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)[4], and Rule 14a-9, 17 C.F.R. § 240.14a-9[5]. For a plaintiff to make a claim under § 14(a) and Rule 14a-9, he must establish that proxy solicitations contained misrepresentations or omissions of material facts which he relied upon to his detriment. Koplin's § 14(a) claim fails in this case because he is unable to establish the omission of material facts. Koplin claims that defendants did not include information about changes in the association's investment strategies from loans to mortgage-backed securities in their proxy statement. Koplin is correct in asserting that this information was not disclosed in the 1990 proxy statement and accompanying annual reports. However, Koplin is incorrect in asserting that this information was never disclosed. Labe's 1989 annual report contains balance sheets entries reflecting the association's change in investment emphasis from loans to mortgage-backed securities. See, e.g., Memorandum in Support of Defendants' Motion to Dismiss, Exhibit A, Labe Federal Savings and Loan 1989 Annual Report at 2, 11, and 12. In addition, references in the body of the annual report allude to changes in investment strategies. See e.g., Id. at 3. Since the investment strategy information had already been disclosed, its inclusion in the 1990 proxy statement was not necessary. See Frigitemp Corp. v. Financial Dynamics Fund, 524 F.2d 275, 282 (2d Cir.1975) (if information known to appellants, no reason for defendant to disclose it). Therefore, no omission occurred.
Further, plaintiff claims that defendants should have disclosed in the proxy statement the risks involved with these investment strategies. It is sufficient that defendants have disclosed the existence of the investment strategy themselves. If the underlying facts are provided, shareholders can then draw their own conclusions about *1343 the riskiness or chance of success of particular strategies. See Telvest, Inc. v. Wisconsin Real Estate Investment Trust, 489 F.Supp. 250, 254 (E.D.Wisc.1980) (as long as existence of disputed trust payments disclosed, assessment of whether trust declaration violated need not be provided); Gulf & Western Industries, Inc. v. Great A. & P. Tea Co. Inc., 476 F.2d 687, 697 (2d Cir.1973) ("the disclosure requirements of the securities laws require `nothing more than the disclosure of basic facts so that outsiders may draw upon their own evaluative experience in reaching their own investment decisions ...'"). Defendants need not provide their own evaluations.
In addition, the riskiness of the association's investment ventures does not have sufficient involvement with the issues of the proxy vote to make the omissions material. The proxy vote dealt with the reelection of two directors to the board. Omissions from proxy materials soliciting reelection of directors are only actionable where they relate to questions of directors' self-dealing, not questions of business judgment. United States v. Matthews, 787 F.2d 38, 48 (2d Cir.1986) (omission only actionable insofar as it alleged self-dealing by directors); Dixon v. Ladish Co., 597 F.Supp. 20, 32 (E.D.Wisc.1984) (corporate mismanagement claim does not bootstrap case into federal court), aff'd, Kademian v. Ladish Co., 792 F.2d 614 (7th Cir.1986); Gaines v. Haughton, 645 F.2d 761, 779 (9th Cir.1981) (absent allegations of self-dealing for the direct and personal benefit of the directors, director misconduct need not be disclosed in proxy solicitations for director elections), rev'd on other grounds, In Re McLinn, 739 F.2d 1395 (9th Cir.1984), cited with approval in Shields on Behalf of Sundstrand Corp. v. Erickson, 710 F.Supp. 686, 693 (N.D.Ill.1989). The omission raised by plaintiff  non-disclosure of the riskiness of the strategies pursued by the association  bears on the directors' business judgment, not their personal integrity. Nowhere in connection with the investment decisions of the association does Koplin allege that the directors acted for their own benefit. This investment information, therefore, need not be disclosed. Since the omissions claimed by plaintiff were either not omitted or not material, plaintiff fails to establish a § 14(a) claim. Count II is dismissed.

II. State Law Violations

Counts III, V, VI, VII
Since portions of plaintiff's § 10(b) and 10b-5 claims remain, this court retains jurisdiction over the state law claims that plaintiff also brings in his complaint. Counts III, V, VI and VII will stand.

CONCLUSION
Defendants' motion to dismiss the complaint has been granted in part and denied in part. Count II of the complaint alleging a § 14(b) violation is dismissed. Count I alleging § 10(b) and Rule 10b-5 violations is not dismissed in its entirety, but plaintiff's potential recovery under this count has been limited. Plaintiff may only recover for any decrease in market value of his Labe shares caused by the omission of information on the Greenblatt litigation and settlement. Plaintiff may allege misrepresentations related to the opportunity for and support of his purchase of 80% of Labe stock, but he may only claim the costs and expenses incurred in preparing and submitting his FHLBB application as losses. Potential recovery against the directors of Labe, other than Klein, is limited to any costs incurred in the preparation and submission of the FHLBB application. As for the remaining counts of the complaint, Counts III-VII stand.
IT IS SO ORDERED.
NOTES
[1] Section 10(b) makes it unlawful for any person directly or indirectly, by any means of interstate commerce or the mails or a facility of any national securities exchange, to use or employ, in connection with the purchase or sale of any security registered or unregistered on a national securities exchange, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate.
[2] Rule 10b-5 makes it unlawful for any person, directly or indirectly, by the use of any means of interstate commerce or the mails or any facility of any national securities exchange to (a) employ any device, scheme, or artifice to defraud, (b) make any untrue statement or to omit a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon a person, in connection with the purchase or sale of a security.
[3] Section 20(a) provides that every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
[4] Section 14(a) makes it unlawful for any person, by the use of the mails, any means of interstate commerce, or any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 781 of this title.
[5] Rule 14a-9 provides in part that no solicitation subject to this regulation shall be made by means of any proxy statement or form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made is false or misleading with respect to any material fact, or which omits to state any material fact which is necessary in order to make the statement not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.